UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                      Criminal No. 20-cr-20436

v.                                    HON. ROBERT H. CLELAND

GLEN RICHARD MOUSSEAU,

    Defendant.

                                   /

## MOTION BY THE UNITED STATES FOR AN UPWARD DEPARTURE

The United States, by and through its attorneys, Acting United States Attorney, Saima S. Mohsin, and Assistant United States Attorney, Jonathan Goulding, hereby moves the Court for an upward departure under the Sentencing Guidelines, U.S.S.G. §4A1.3(a), due to the defendant's under-represented criminal history category, given that his prior criminal convictions in Canada are not included in that calculation.

The United States sought concurrence in this motion but concurrence was not received. The grounds for this motion are set forth in the supporting brief herein.

                                        Respectfully submitted,

                                        SAIMA S. MOHSIN
                                        Acting United States Attorney

                                        */s/ Jonathan Goulding*
                                        **Jonathan Goulding** (MA 664444)
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        (313) 226-9742
                                        Jonathan.Goulding@usdoj.gov

Dated: February 16, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                            Criminal No. 20-cr-20436

v.                                      HON. ROBERT H. CLELAND

GLEN RICHARD MOUSSEAU,

    Defendant.

    _____/

## BRIEF IN SUPPORT OF MOTION BY THE UNITED STATES FOR AN UPWARD DEPARTURE

## INTRODUCTION

On October 29, 2020, the defendant, Glen Richard Mousseau, plead guilty to Possession of Marijuana with the Intent to Distribute, 21 U.S.C. § 841(a)(1), and Unlawful Reentry into the United States, 8 U.S.C. § 1326(a). Sentencing is scheduled for March 2, 2021.

The defendant, a native and citizen of Canada, has no criminal history in the United States, and the Probation Department assessed his criminal history score to be zero, placing him in criminal history category I, with a guideline range of 57-71 months. (PSR at 10, ECF No. 26, PageID.196.) The defendant's foreign criminal history[1] is quite extensive, however, and the Plea Agreement contemplates a motion

---

[1] All of Mousseau's foreign criminal convictions were in Canada, which provides significant due process rights to its defendants:

> Defendants have the right to a timely trial, to be present at their trial, and to consult with an attorney of their choice in a timely manner. The government provides an attorney at public expense if needed when defendants face serious criminal charges, and defendants may confront or question witnesses against them and present witnesses and evidence on their behalf. Defendants and their attorneys generally had adequate time and facilities to prepare a defense. Defendants also enjoy a presumption of innocence, the right to be informed promptly and in detail of the charges against them (with free interpretation as necessary), the right not to be compelled to testify or confess guilt, and the right of appeal. Defendants have a right to a timely trial, to be present at their trial, and to consult with an attorney.

See U.S. Department of State, Bureau of Democracy, Human Rights, and Labor, 2019 Country Reports on Human Rights Practices: Canada, Section 1(e).

by the government for an upward departure on that basis. (PSR at 5, 11-15, ECF No. 26, PageID.191, 197-201.)

The defendant's foreign convictions could have placed him into criminal history category VI had they occurred in the United States. The nature and frequency of the defendant's foreign crimes—and, in several cases, similarity to the present crime—suggest that a criminal history category score of I significantly underrepresents both the seriousness of his criminal history and the likelihood of recidivism. The government therefore respectfully requests that the Court find an upward departure to be warranted for the reasons stated below.

## STATEMENT OF RELEVANT FACTS

In the early hours of May 10, 2020, St. Clair County Sheriff's Deputies encountered the defendant scouting for a location to smuggle $97,080 in his possession from Michigan to Canada. (*See* Complaint, ECF No. 1, PageID.3-4; *see also* Exhibit A – Report of Investigation.) During an interview with Homeland Security Investigations (HSI) later that morning, the defendant explained that he runs a smuggling "company" serving three criminal organizations in the United States and Canada. (*See id*.) The $97,080 was to be payment for 100 pounds of marijuana.

During the interview, the defendant detailed the means by which he smuggles contraband between the United States and Canada. Simply put, the contraband is packaged to be neutrally buoyant and waterproof. An associate of the defendant then

traverses the St. Clair River and crosses the international boundary using diving equipment and a Seabob, a luxury sea-toy that, according to the manufacturer, can propel divers underwater[2]. The defendant stated that his organization had three Seabobs, one of which had been recently seized by Border Patrol. (*See id*.)

The defendant agreed to assist HSI during their investigation with respect to a purported shipment of methamphetamine that was to arrive in Detroit on May 22, 2020, but subsequently left town at approximately 3:00 a.m. that same day. (*See* Complaint, ECF No. 1, PageID.4-5.)

Undeterred by his recent encounter with law enforcement, at approximately 2:35 a.m. on June 5, 2020, a vessel carrying the defendant crossed the international boundary from Canada into the United States at a high rate of speed. (Exhibit B – Incident Report, at 9.) The vessel fled when Border Patrol attempted to perform a stop, and Border Patrol agents observed two large bundles thrown over the side of the vessel. (*See id*.) The defendant had abandoned ship and was found seemingly unconscious in the water with approximately 265 pounds of marijuana (including packaging) attached to him with tow ropes. (*See id*; *see also* Exhibit C – Report of Investigation.) The defendant was arrested, and, in a subsequent interview, stated that he had been smuggling the marijuana for the same organization that he was transporting the $97,080 earlier in May. (*See id*.) When the marijuana was later

---

[2] *See generally* www.seabob.com

weighed exclusive of packaging, it totaled approximately 84 kilograms. (Exhibit C – Report of Investigation.) The defendant also told agents that the group on whose behalf he had been smuggling had agreed to purchase his smuggling business. (*See id.*)

Later that day, the defendant was charged by complaint with Bulk Cash Smuggling, Unlawful Entry into the United States, and Possession with the Intent to Deliver a Controlled Substance. (Complaint, ECF No. 1, PageID.1.) The defendant waived his right to proceed by Indictment, and, on September 17, 2020, the government filed a four count Information. The defendant has plead guilty to two of those counts.

## FOREIGN CRIMINAL HISTORY

The defendant has accrued approximately forty seven convictions over twenty seven criminal cases during the past thirty two years in Canada. (*See* PSR at 11-14, ECF No. 24, PageID.133-136.) His convictions include offenses for controlled substance violations, and theft offenses as well as armed robbery and assault. (*See id.*) Had the defendant's Canadian criminal history been scored under the Sentencing Guidelines, the probation department may well have calculated 17 criminal history points and therefore a Criminal History Category VI, as reflected in the below chart:

| Date | Offense | Sentence | Points |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 07/28/2017 | Importation of a Schedule I substance | 2 years confinement | 3 |
| 01/17/2017 | Theft under $5,000 | 20 days | 1 |
| 10/18/2016 | Theft under $5,000 | Noncustodial sentence | 1 |
| 11/13/2013 | Poss. Schedule II substance | Noncustodial sentence | 1 |
| 05/16/2013 | Forgery/Use of a forged document | 60 days | 2 |
| 05/16/2013 | Forgery/Use of a forged document | 60 days | 2 |
| 07/15/2012 | Assault/Mischief | Noncustodial sentence | 1 |
| 08/25/2010 | Armed Robbery | 314 days | 3 |
| 07/19/2002 | Possession of a Schedule I substance for the Purpose of Trafficking; Trafficking in a Schedule I substance (plus 7 other counts) | 2 years (Possession) 5 years (Trafficking) Paroled:10/5/2007 Returned to custody (violation): 07/09/2008 | 3 |
| | | **TOTAL POINTS:** | 17 |

(*See generally* PSR at 11-14, ECF No. 24, PageID.133-136.)

## ARGUMENT

### 1. Legal standards

When the evidence indicates that the defendant's criminal history "substantially underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). A history of foreign convictions not

6

considered in computing the criminal history category may justify such an upward departure. U.S.S.G. § 4A1.3(a)(2)(A); *see also id*. at application note 2 (prior foreign sentence for a serious offense listed as an exemplar basis for an upward departure).

At least one court has found that the sentencing judge does not abuse their discretion when fashioning a sentence that is not higher than the calculated guidelines would have been had a foreign offense been committed in the United States. *United States v. Chaif*, 931 F.2d 894, *2 (6th Cir. 1991) ("Because [the] sentence is not higher than it would have been had the murder conviction occurred in the United States, we find that the district court's upward departure was not an abuse of discretion.")

2. **The defendant's criminal history category under the Sentencing Guidelines substantially underrepresents the seriousness of his criminal history.**

The defendant's first drug trafficking conviction occurred in 1992 at the age of 21 when he was convicted of possessing a restricted drug for the purpose of trafficking. (PSR at 11, ECF No. 24, PageID.133.) His second and third such convictions occurred at the age of 28 when he was convicted of producing a schedule II substance and possessing a schedule I substance for the purpose of trafficking. (PSR at 12, ECF No. 24, PageID.134.) In 2002, the defendant was convicted of, among other offenses, possessing a schedule I substance for the purpose of trafficking as well as a substantive trafficking offense. (PSR at 12-13, ECF No. 24,

PageID.134-135.) Given the length of incarceration imposed for these offenses—two and five years, respectively—these were the defendant's first foreign convictions that would have affected his criminal history category score had they been committed in the United States, as the defendant's release from custody fell within the fifteen year lookback period preceding his current offense[3].

The defendant was later convicted for armed robbery (2010), assault (2012), forgery (twice in 2013), theft (2016, 2017), and other offenses. The armed robbery conviction in 2010 resulted in a 314 day sentence; the other convictions resulted in either noncustodial sentences or 60 days or less of incarceration. The defendant's most recent trafficking offense was a violation for importing a schedule I substance in 2017, for which he received a two year sentence.

In short, the defendant's Canadian history reveals a pattern of serious criminal behavior endangering the community, commencing as a young adult and persisting today. By contrast, a criminal history score of zero indicates, at most, a minimal or very distant prior criminal history. Such a score substantially underrepresents the seriousness of the defendant's criminal history and his culpability as a repeat offender. An upward departure is therefore warranted. *See U.S. v. Concha*, 294 F.3d

---

[3] The stated date of parole (October 5, 2007) and the stated date of his return to custody for a violation (July 9, 2008) support the conclusion that the defendant's release from custody occurred within fifteen years of the commission of the current offense.

1248, 1255 (10th Cir. 2002) ("history of uncounted past offenses places [the defendant] outside the heartland of defendants with [the same criminal history category]").

   3. **The defendant's criminal history category substantially underrepresents the likelihood of recidivism.**

The criminal history category is also designed to reflect the likelihood that the defendant will reoffend and the need to protect the public from the future crimes of the defendant. *See* U.S.S.G. § 4A1.1, Introductory Commentary. As the guidelines note, empirical research correlates recidivism and patterns of career criminal behavior. *See id*.

In the defendant's case, his foreign criminal history demonstrates an enduring pattern of criminal behavior. And, unfortunately, age has not mitigated the defendant's propensity to commit crimes. The offenses the defendant chose to commit as an adult in his thirties and forties—drug trafficking, armed robbery, assault, theft, and forgery—were comparable in their seriousness and their frequency to the crimes he committed as a teenager and young adult in his twenties. Today the defendant is 49 years old and has dozens of convictions. Prior periods of incarceration have not caused him to change his behavior. His May 2020 arrest and later flight from the United States in this case further demonstrate that there is likely no circumstance that will deter him. Thus the risk of the defendant committing serious offenses in the future appears to be as high as it has ever been. Underscoring

this point is the similarity between the nature of the offense for which the defendant is to be sentenced by this Court and several of his past offenses in Canada, including the most recent one in or around 2017. *See U.S. v. Port*, 532 F.3d 753, 755 (8th Cir. 2008) ("[the defendant's] foreign convictions demonstrate a clear risk of recidivism given the close relationship between his present offense and his prior offenses and given [the defendant's] failure to cease participation … even after his incarcerations for similar offenses.") As such, the defendant's criminal history score of zero substantially underrepresents the likelihood of recidivism and an upward departure is warranted for this additional reason.

   4. **An upward departure referencing criminal history category IV is warranted.**

When calculating a departure, the Court "shall use, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. §4A1.3(a)(4)(A). Referencing criminal history category IV would fairly take into account the most serious of Mousseau's foreign criminal convictions that would have scored had they been domestic: the 2017 importation of a controlled substance offense, the 2010 armed robbery offense, and the 2002 trafficking-related offenses. Together, these offenses would have likely resulted in a criminal history score of 9 points had they occurred in the United States and, consequently, in a criminal history category of IV. But there are two additional factors to consider that suggest criminal

10

history category IV is an eminently reasonably reference point for the Court, if not too low.

First, had the defendant's crimes been committed in the United States, it is quite possible that the Court would find him to be career offender with a guideline range of 235-293 months[4] on account of his prior armed robbery and controlled substance convictions. *See generally* U.S.S.G. §4B1. That they are foreign convictions, however, forecloses that option[5]. Although the career offender provisions relate to offense level, not criminal history category, it is instructive that the calculated sentencing range stated in the PSR is less than one fourth of what would have been calculated had Mousseau's crimes occurred the United States and qualified him for career offender status.

Second, as indicated in the above chart, Mousseau had six additional foreign convictions resulting in either noncustodial sentences or a custodial sentence that did not exceed sixty days. Those convictions would have resulted in an additional 8 criminal history points had they been domestic, for a total of 17 criminal history

---

[4] Calculated from a base offense level of 32, *see* U.S.S.G. § 4B1.1(b)(3), plus the adjustments calculated by the Probation Department in the PSR (net +1), for a total offense level of 33, with a criminal history category VI.

[5] *See* U.S.S.G. §§ 4B1.2(a) (defining a "crime of violence" for purposes of § 4B1.1 as *inter alia* "any offense under federal or state law…"), 4B1.2 note 3 (incorporating the definitions and instructions for computing criminal histories provided in 4A1.2), 4A1.2(o) (defining a felony offense as "any federal, state, or local offense punishable by ... a term of imprisonment exceeding one year), 4A1.2(h) (expressly excluding "foreign convictions").

11

points. Although foreign convictions for offenses that are less serious need not always result in an upward departure, those six convictions would have nearly doubled Mousseau's criminal history score but for the fact that they were foreign convictions. And set against the backdrop of a lifetime of criminal activity, they further suggest a high likelihood of recidivating.

For these reasons, criminal history category IV is an appropriate reference point for the Court when considering an upward departure.

5. **The § 3553(a) factors suggest that a sentence at or below the midpoint of a 70-87 months range would be sufficient but not greater than necessary to achieve the statutory purposes of sentencing.**

A Total Offense Level of 23[6] and a Criminal History Category IV results in a guideline range of 70-87 months. Respectfully, the government recommends that the Court upwardly depart when fashioning a sentence and impose a sentence between

---

[6] The Probation Department calculated a Total Offense Level of 25. The two level discrepancy arises out of the Probation Department's determination that Mousseau should be held responsible for an additional 45.45 kilograms of marijuana on top of the marijuana found in his possession on June 5, 2020 that is the subject of his guilty plea to Count 2 of the Information. (*See* PSR at 8, ECF No. 26, PageID.194.) This is due to Mousseau's statement that the $97,080 he possessed on May 10, 2020 was intended to purchase 100 pounds (45.45 kilograms) of marijuana. (*See id.*) The government, however, agreed in the Plea Agreement that it would not argue that Mousseau possessed 100 kilograms or more of marijuana, and both parties agreed that the guidelines at §2D1.1(c)(9)-(10) (relating to less than 100 kg of marijuana) applied. (Plea Agreement at 8-10, ECF No. 22, PageID.64-66.) Even if the Probation Department is correct in its assessment, the government will stand by its agreement and hereby recommends a sentence consistent with the Plea Agreement.

the bottom and midpoint of this range. Taking into account the factors identified in 18 U.S.C. §3553(a), discussed below, such a sentence is reasonable.

### Nature and Circumstances of the Offense

The offense in this case involved the defendant importing a controlled substance into the United States at night using a boat travelling at high speed. On top of the danger posed by drug trafficking generally, Mousseau put himself, his boat driver, and the Border Patrol Agents who rescued him at risk. Moreover, this was not the defendant's first trafficking offense. As his own statements reveal—corroborated by his Canadian criminal history—the defendant has experience drug trafficking. Thus his culpability as a repeat offender is higher than it would otherwise be. Additionally, the defendant played a leadership role in the smuggling, which, according to him, was a commercial enterprise attractive enough that a criminal organization wanted to purchase it. Finally, the defendant has showed relative sophistication in the manner and means of his smuggling: traversing an international waterway at high speed during the night hours and using diving equipment that would ostensibly allow him cross the international boundary undetected. The nature and circumstances of the offense thus suggest a weighty sentence is appropriate.

### History and Characteristics of Defendant

The defendant's history also supports a weighty sentence. In 2002, he was sentenced to five years in prison for a trafficking offense. This represented a

significant escalation from any prior term of imprisonment previously imposed. Yet it did not deter him from committing additional crimes. Among other offenses, the defendant was sentenced in 2017 to two years imprisonment for importing a controlled substance. Yet by May 2020, the defendant had what was, by his own admission to HSI agents, essentially an international smuggling operation in place. Balanced against his negative criminal history, the defendant does appear to have a number of close family ties in Canada.

Considered together, the history and characteristics of the defendant suggest that a sentence in excess of five years—his longest sentence to-date—may be appropriate. The Court can consider the failure of a defendant's prior sentences to deter him, *see United States v. Pittman*, 736 Fed.Appx. 551, 557 (6th Cir. 2018), and the defendant's history suggests that it would be appropriate to do so in this case.

> Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law and to Provide Just Punishment for the Offense, and the Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

The domestic impacts of cross-border drug trafficking are well documented. "[T]ransnational drug trafficking ... poses considerable danger to communities in the United States in which [the drugs] are distributed…the corruption and violence associated with such trafficking are related to the total danger within this and other

jurisdictions." *U.S. v. Balleres*, 378 Fed.Appx. 48, *1 (2d Cir. 2010) (internal quotations omitted) (unpublished).

The need for the sentence imposed by the Court to reflect the serious nature of cross-border drug trafficking, to deter the defendant and others from committing similar crimes, and to promote respect for the law all suggest that a significant sentence is appropriate in this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the government respectfully requests that the Court find that an upward departure is warranted in this case and sentence the defendant accordingly.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*/s/ Jonathan Goulding*
Jonathan Goulding (MA 664444)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9742
Jonathan.Goulding@usdoj.gov

Dated: February 16, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                                */s/ Jonathan Goulding*
                                                Jonathan Goulding (MA 664444)
                                                Assistant United States Attorney
                                                211 W. Fort Street, Suite 2001
                                                Detroit, Michigan  48226
                                                (313) 226-9742
                                                Jonathan.Goulding@usdoj.gov