UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

Case No. 20-20436

Honorable Robert H. Cleland

GLEN MOUSSEAU

          Defendant.

_____/

**DEFENDANT'S MOTION FOR VARIANCE
AND/OR DEVIATION FROM ADVISORY GUIDELINE**

NOW COMES, Defendant, Glen Mousseau., by and through his attorney, Victor Mansour, and for his Combined Motion for Variance and/or Departure from Sentencing Guidelines and Sentencing Memorandum, states as follows

1. On October 29, 2020 Glen Mousseau, in accordance with the Rule 11 Plea Agreement, pled guilty to Count 2 of the Information which charged Possession of Marijuana with Intent to Distribute under 21 U.S.C. § 841(a)(1) and Count 4 which charged Unlawful Reentry After Removal under 8 U.S.C. § 1326 (a). He faces a maximum penalty of 20 years imprisonment. A possible maximum fine of $1,000,000 and a mandatory period of supervised release of at least 3 years.

2. In accordance with the Rule 11 Plea Agreement, the parties have agreed

that the advisory guidelines maximum offense level of 23 and can be as low as 19.

3. Though not binding on this Court, the Government has recommended that any sentence of imprisonment be no more than the midpoint of the sentence guideline range inclusive of any upward departure the Court may determine is warranted. Should this Court conclude that the guideline range as computed by the parties (excluding the governments Motion for Upward Departure) is correct, then 52 months is the midpoint of the guideline ranged, i.e., approximately 4 ½ years. See, Rule 11 Plea Agreement – ECF #22 at 11 – 12.

4. The United States Probation Department disagreed with the Government and Defense guideline calculations and submit the advisory guideline range is 57 – 71 months, i.e., apprioximatley 5 ½ years for the midpoint offense level of 25.

5. In accordance with the factors mandated by 18 U.S.C. § 3553(a), *et seq.*, Mr. Mousseau requests that this Court deviate from the advisory guideline range and sentence him to a period of incarceration of 42 months, i.e., 3 ½ years. That sentence being one that is not greater than necessary to comply with the purposes of that subsection. The reasons in support of that request, are more fully stated in the attached Brief in Support and Combined Sentencing Memorandum.

6. Pursuant to LCR 7.1, this writer spoke with Mr. Jonathan Goulding, Assistant United States Attorney, inquiring whether the government would concur, who advised the government would not concur in the relief sought within this motion.

WHEREFORE, Defendant, Glen Mousseau, respectfully requests this Honorable Court grant his Motion for a Downward Departure and sentence him to a period of incarceration of 42 months, i.e., 3 ½ years and after completion of his prison sentence, Mr. Mousseau will be deported to his home country of Canada never to return to the United States of America.

Respectfully submitted,

s/ Victor Mansour
Victor Mansour (P71767)
Attorney for Glen Mousseau
32121 Woodward Ave., Ste PH
Royal Oak, MI 48073
(248) 579-9800
victor@mansourlawpc.com

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

            Plaintiff,

v.

**GLEN MOUSSEAU**

            Defendant.
_____/

Case No. 20-20436

Honorable Robert H. Cleland

## BRIEF IN SUPPORT OF COMBINED
## MOTION FOR VARIANCE AND/OR DEVIATION FROM
## ADVISORY GUIDELINE RANGE AND SENTENCING MEMORANDUM

### I.  INTRODUCTION

There is no doubt that Glen Mousseau has had a trying life. From the time he was a small boy, he has dealt with a series of personal hardships. His mother was injured and not emotionally or physically present for Mr. Mousseau. His father worked long hours and not around. Mr. Mousseau was *un*-supervised by his older siblings as a small boy and into his teenage years. His childhood was robbed of him by the people who were to take care of him. His older siblings paid people to fist fight Mr. Mousseau. They fed Mr. Mousseau hard mind-altering drugs when only he was a small boy. He was physically and sexually abused. This changed his path forever. It is no wonder his struggles have led him to a life of crime. And as an adult, his struggles continued. He was a criminal. His past poor choices led a path that brings him before this Honorable

4

Court.

The Court might expect an individual with this background to be embittered and resentful. This is far from the truth for Glen Mousseau. In a cascade of reference letters, a series of individuals who know Mr. Mousseau best attest to his warmth, humility, and fundamental kindness for others. Mr. Mousseau is the type of person who will literally clothe the poor, shelter the homeless and feed the needy. He consistently assists those less fortunate than himself, providing them with food, helping them, and putting a roof over their heads. **(Exhibit A Multiple Letters in Support of Glen Mousseau)**

Nevertheless, Mr. Mousseau has made mistakes and poor decisions. He is deeply ashamed for the conduct which brings him before the Court. In speaking with Mr. Mousseau, he feels he let everyone down. Most of all, he let his family down. Mr. Mousseau looks in the mirror every day reflecting on his decisions. He is dedicated to improving his life and learning from his conduct. Mr. Mousseau is very conscious of his actions. He just wants to be an upstanding citizen and shake his horrid past. The only thing that matters to him now is to understand the past, focus on the future, and make better choices going forward. He feels ashamed that he let his family down. Mr. Mousseau is motivated to be back by his families side a better person. **(Exhibit B Letter to the Court from Glen Mousseau)**

Given his compelling personal history, he demonstrates high character, giving in his everyday life, and his fulsome acceptance of responsibility, Glen Mousseau

respectfully asks the Court to impose a sentence not to exceed 3 ½ years of incarceration (42 months) plus credit for all time incarcerated. Mr. Mousseau will be deported to his home country at the conclusion of his prison sentence. That sentence being one that is not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a), *et seq*. Glen Mousseau was a criminal, he humbly asks this Court to see him for more than the criminal he was.

## II.    STANDARD

As the Court is well-aware, the Supreme Court invalidated the compulsory use of the Federal Sentencing Guidelines, rendering them advisory. *United States v. Booker*, 543 U.S. 220, 245 (2005). Indeed, it is now the mandate of the federal courts to "impose a sentence sufficient, but not greater than necessary" to comply with the criteria set forth in 18 U.S.C. § 3553(a). *United States v. Kimbrough*, 552 U.S. 85, 101 (2007).

The Supreme Court has since confirmed that evidence providing a complete, "up-to-date picture of [a defendant's] 'history and characteristics'" "is clearly relevant to the selection of an appropriate sentence." *Pepper v. United States*, 562 U.S. 476, 492 (2011). *Pepper* emphasized that the sentencing court must "consider every convicted person as an individual," and must fashion a punishment that "fit[s] the offender and not merely the crime." *Id.* at 487. District courts are therefore "free to make [their] own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 552 U.S. at 113.

In fact, § 3553(a) permits courts the freedom to impose a sentence that substantially varies from the advisory Guidelines range "based solely on policy considerations, including disagreements with the Guidelines." *Id.* at 570. The Court does not need "extraordinary" characteristics and history to vary from the Guidelines. *United States v. Smart*, 518 F.3d 800, 808–809 (10th Cir. 2008).

### III.  ARGUMENT

   **A.  Glen Mousseau's History, Characteristics, Background, Character, and Conduct Justify Variance and/or Deviation from the Sentencing Guidelines**

From a very young age, Glen Mousseau has known hardship. Unfortunately, this hardship was from abandonment, substance, physical and sexual abuse as a child. Around the age of 7, Mr. Mousseau first remembers his mother dissociation from the family due to her own personal struggles. She was not a part of Mr. Mousseau life growing up.  His father worked to provide for the family which left a young Glen Mousseau to be supervised by his older teenage siblings.  His siblings failed in place of parents and used Mr. Mousseau as their source of amusement, as their punching bag, for sexual and comedic entertainment.  As mentioned, they force fed him mind altering illegal drugs, physically and sexually abused him, destroyed his youth before it even started.  As Mr. Mousseau grew older, he struggled mightily.  His struggles were real and led him to the streets for a life of crime.

To state the obvious, this meant that Mr. Mousseau simply could not behave as a typical young boy. He was thrust into a situation that left long lasting trauma whereas

7

an adult, he struggled to handle. A situation he struggled to handle. While all the other children were going about living their normal lives, Mr. Mousseau was constantly fending for himself to make it to the next day.

Unfortunately, life did not normalize for Mr. Mousseau. As mentioned above, his mother and father did not raise him. Supervision was minimal unless used for his older sibling's entertainment. Things were terrible for himself and the family. His best was not good enough to succeed in life. The struggle was mighty on a young boy.

Despite Mr. Mousseau's past, he remains focused on his future. Regardless of his various personal struggles, by all accounts, Mr. Mousseau remains an incredibly giving and nurturing person as evidence by the cascade of letter on his behalf.

Mr. Mousseau's priorities are to change from the criminal he was to a person his family can be proud of. The shame he brought to his family is motivation for a person, who was delt an awful hand at childhood life, to forever change his future. Mr. Mousseau was able to reflect on his past and come to terms to forgive the people around him and put the criminal behavior behind once and for all. The time lost away from his family has a tremendous burden on Mr. Mousseau.

Inexorably intertwined with your Defendant's severe personal hardships is his age as he nears 50 years old in couple weeks. § 5H1.1 provides "[a]ge may be a reason to depart downward in a case which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." *See*, *e g*, *United States* v *Morawski*, 754 F 3d

8

440, 441 (7th Cir 2014).

> The Sentencing Commission has observed that "[r]ecidivism rates decline relatively consistently as age increases." Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including Michigan) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age. These statistics suggest that past fifty years old there is a significantly lower rate of recidivism. Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing. *United States* v *Payton*, 754 F 3d 375, 378-379 (6th Cir 2014) (citations omitted). *See also*, *United States* v *Collington*, 461 F 3d 805, 807-811 (6th Cir 2006).

In an age of sequestration and draconian budgetary cut-backs, the costs associated with incarceration can be a facet of the sentencing process. *See*, *e g*, *United States* v *Leitch*, 2013 WL 753445 (ED NY 2013); *see also*, *United States* v *Ingram*, 721 F 3d 35, 43 (2d Cir 2013) (Calabresi, J, concurring). These sentiments were articulated by then Attorney General Eric Holder, http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130404.html. Particularly for individuals such as Mr. Mousseau, and aging individual, the former Attorney General adroitly questioned the efficacy of incarceration, http://www.justice.gov/iso/ops/ag/speeches/2013-speech-130812.html.

Glen Mousseau respectfully submits he is entitled to a two (2) level reduction pursuant to § 3B1.2 (b) to an Offense Level of 21. His role was of a mule. He was hired by the leaders and organizers to transport marijuana over the US/Canada Border. In reviewing the discovery materials, Mr. Mousseau was the patsy fall guy.

9

What he spoke to the agents was puffed or bolstered to appear more knowledgeable that what he really was. His knowledge was minimal and of no value to anyone. He was thrown overboard for the leaders and organizers to make their getaway while Mr. Mousseau almost died in the water he was thrown into.

Utilizing a comparative analysis, Mr. Mousseau's involvement was substantially less than what a leader or organizer involvement would be and there is no information that he did "shared in the profits," thus entitling him to a minor participant reduction, *see*, *e g*, *United States* v *Kelly*, 601 Fed Appx 802, 804 (11th Cir 2015); *United States* v *Salazar-Aleman*, 741 F 3d 878, 880 (8th Cir 2013); *United States* v *Garcia*, 939 F Supp 2d 1216, 1228-1230 (D NM 2013). In the commentary section of § 3B1.2 Applicability of Adjustment part (A), discussed within this section is the limited participation involvement. A defendant may receive an adjustment under this guideline who performs a limited function in the criminal activity. Mr. Mousseau's limited function was a mule moving the marijuana or cash, nothing more. His limited involvement was to swim the marijuana into the United States. He was hired to do a job as a drug mule. Mr. Mousseau is substantially less culpable than average participant. His participation was limited to transporting.

**B. Glen Mousseau Truly Accepts Responsibility for His Crime and Poses No Continued Threat to the Public (§ 3553(a)(2)(B)-(C)).**

Despite these good works and perseverance, Glen Mousseau made many mistakes and very bad decisions. With a dream of supporting his family, he hit the streets. The only place he knew how to survive. It was a mistake. He realizes now that

10

he had no business in the streets. His life was in a dangerous area. Mr. Mousseau was in over his head and the lawlessness began to seem like the norm to him. He tried to supplement his income with criminal acts. For clarification purposes, Mr. Mousseau armed robbery conviction was a disagreement with a cab driver over a fare and no weapon was involved. He now can look back and reflect on the life that was and make better choices for the life that is to come.

Mr. Mousseau does not make excuses for his mistakes – he owns them. He understands that his longstanding troubles are no excuse for breaking the law. He is deeply ashamed of his conduct. Mr. Mousseau's desperation showed a character in him that he will have to live with until he dies. He is a federal felon, can never be expunged from his record. Never allowed to return to the United States of America. And is leaving a family behind because of his troubled past.

Plainly, Glen Mousseau understands the seriousness of his actions and his conduct. He poses minimal risk of recidivism once released and shows significant insight into his own conduct.

We are cognizant the Court may not construe any of the aforementioned criteria as "extraordinary" when considering the appropriateness of a downward departure. *See*, *United States* v *McBride*, 343 F 3d 470, 475-476 (6th Cir 2006). Nonetheless, their cumulative effect is undeniable, when considering the propriety of a variance, *see*, *e g*, *United States* v *Webb*, 403 F 3d 373, 383 (6th Cir 2005), *cert denied*, 546 US 1126, 126 S Ct 1110, 163 L Ed 919 (2006).

11

In his concurrence in *Rita* v *United States*, 551 US 338, 364-365, 127 S Ct 2456, 168 L Ed 2d 203 (2007), Mr Justice Stevens' position eloquently articulates our position.

> Matters such as *age . . . mental or emotional condition*, *medical condition* . . .are not ordinarily considered under the Guidelines. See United States Sentencing Commission, *Guidelines Manual* §§ 5H1.1-6, 11 and 12 (November 2006). These are, however, matters that § 3553 (a) authorizes the sentencing judge to consider. *See*, *e g*, 18 USC § 3553 (a) (1). As such, they are factors that an appellate court must consider under *Booker*'s abuse-of-discretion standard. (Footnote omitted) (emphasis added).

It is our sincere belief, premised upon the foregoing judicially approved analysis, would afford this Court the foundation to "impose 'a sentence sufficient, but not greater than necessary to comply with the purposes' of § 3553 (a) (2). *United States* v *Cage*, 458 F 3d 537, 540 (6th Cir 2006) (quoting *United States* v *Foreman*, 436 F 3d 638, 644 n 1 (6th Cir 2006) )." *United States* v *Gale*, 468 F 3d 929, 933 (6th Cir 2006). In our estimation, such an evaluation would be consistent with the Supreme Court's maxim "the punishment should fit the offender and not merely the crime," *Pepper* v *United States*, 562 US 476, 488, 131 S Ct 1229, 179 L Ed 2d 196 (2011), quoting *Williams* v *New York*, 337 US 241, 247, 69 S Ct 1079, 93 L Ed 1337 (1949).

> [E]ach defendant must be assessed on his or her own terms; courts are not machine presses and sentences are not widgets to be churned out on some criminal justice conveyor belt. *United States* v *Sabillon-Umana*, 772 F 3d 1328, 1330 (10th Cir 2014).

### C. A 3 ½ -Year Sentence Reflects the Seriousness of the Offense, to Promote Respect for the Law, and to provide Just Punishment for the Offense

The sentence requested by Mr. Mousseau does reflect the seriousness of the offense, promotes respect for the law and provides just punishment. It is a 3 ½ year sentence. This Court is also required to impose a term of supervised release; however, Mr. Mousseau will be deported at the conclusion of the prison sentence to his home country of Canada. This adequately reflects the seriousness of the offense, promotes respect for the law and does provide just punishment.

### D. A 3 ½ Year Sentence Affords Adequate Deterrence to Criminal Conduct

Again, a sentence as requested by Mr. Mousseau does afford adequate deterrence to any criminal conduct on his behalf. He will be subjected to the jurisdiction of this Court for a minimum of 3 ½ years and deported from the United States of America at the conclusion of his prison sentence.

### E. A 3 ½ Year Sentence Protects the Public from Further Crimes of the Defendant.

Again, a sentence as described above does provide that protection. Section 3553(a)(6) requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although this subsection is primarily concerned with national sentencing trends, "[a] district judge, … may exercise his or her discretion and

determine a defendant's sentence in light of a co-defendant's sentence." *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) (emphasis omitted); *see also United States v. Young*, 765 F. App'x 126, 128 (6th Cir. 2019) (characterizing consideration of a co-defendant's sentence as possibly "the best practice"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("[Section] 3553(a) does not require district courts to consider sentencing disparity among co- defendants, [but] it also does not prohibit them from doing so.") .

Here we do not have co-defendants to consider sentencing disparity. Even though each defendant is different, and no two cases are the same. The drugs brought into the United States was marijuana. But given Mr. Mousseau's compelling personal history, and demonstrated acceptance of responsibility, a 3 ½ -year sentence with the BOP is sufficient to comply with the purposes of punishment.

## IV. CONCLUSION AND RECOMMENDED SENTENCE

Glen Mousseau has had a hard and trying life, and he has made mistakes and poor decisions. His conduct impacted people he never wished to impact. Nonetheless, he has done a lot of good and has a lot of good left to give. Mr. Mousseau cannot take back his past mistakes or decisions, and he cannot rewrite his history. But he can change his actions going forward. He therefore humbly requests that this Court Deviate from the Advisory Guideline Range and grant a Variance to impose 3 ½ -year (42 months) prison sentence with credit for the time he has served. Mr. Mousseau would respectfully request that his placement be at BOP facility close to Detroit, that can

accommodate risk behavior treatment, trade skills programs, as well as drug treatment programs to use his time at BOP wisely and return to society a better individual at the conclusion of his imprisonment.

                              Respectfully submitted,

                              MANSOUR LAW, P.C.

                              By: *s/Victor Mansour*
                              Victor Mansour (P71767)
                              Attorney for Mr. Glen Mousseau
                              32121 Woodward Ave., Suite PH
                              Royal Oak, MI 48073
                              (248) 579-9800
                              victor@mansourlawpc.com

Date: February 23, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2021, I electronically filed the foregoing document, with the Clerk of the court using the ECF system which sent notification of such filing to all attorneys of record.

         *s/Victor Mansour*
         Victor Mansour (P71767)
         Attorney for Mr. Glen Mousseau
         32121 Woodward Ave., Suite PH
         Royal Oak, MI 48073
         (248) 579-9800
         victor@mansourlawpc.com